**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| PATRICIA D. CONNELL, as Personal | ) | |
| Representative of the Estate of Debra | ) | |
| Lynn Cox, deceased, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-CV-00685-KOB |
| | ) | |
| BIRMINGHAM NURSING AND | ) | |
| REHABILITATION CENTER EAST, | ) | |
| LLC, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Birmingham Nursing and

Rehabilitation Center East, LLC's "Amended Motion to Compel Arbitration and Motion to Stay

Proceedings Pending Resolution of Arbitration or, Alternatively, to Dismiss." (Doc. 33).

Defendant Birmingham East seeks to enforce the signed Arbitration Agreement between the

parties. The agreement, if enforced, requires all disputes to be resolved through arbitration.

On July 19, 2018, Defendant Birmingham East filed this motion to compel arbitration.

(Doc. 33). On August 13, 2018, Plaintiff Patricia Connell filed her response in opposition. (Doc.

36). Plaintiff argued that she did not sign an arbitration agreement and sought to conduct

discovery to determine the validity of the agreement. On August 27, Birmingham East filed its

reply brief, arguing that Ms. Connell did sign the arbitration agreement, but also seeking

discovery into the limited issue of the validity of the arbitration agreement. (Doc. 37).

On September 5, 2018, this court stayed the motion to compel arbitration so that the

parties could conduct limited discovery into the issue of the validity of the arbitration agreement.

(Doc. 38). On December 21, Ms. Connell and Birmingham East filed supplemental replies to the motion to compel arbitration. (Docs. 53–54). The motion is now ripe for review.

Ms. Debra Lynn Cox was an individual living in Birmingham East's facility, a long-term care nursing and rehabilitation facility. (Doc. 34). Patricia Connell, Ms. Cox's Personal Representative, filed this suit against Birmingham East on March 30, 2018, claiming that Birmingham East caused Ms. Cox's wrongful death when Ms. Cox choked on her food while unsupervised on December 18, 2017. (Doc. 10 at 5–6).

On July 29, 2011, Ms. Connell executed an Admission Agreement on behalf of Ms. Cox as her "Authorized Representative" to admit Ms. Cox to Birmingham East's facility. (Doc. 34 at 4). Paragraph 24 of the Admission Agreement is an arbitration clause:

> 24. <u>ARBITRATION AGREEMENT:</u> IF THE RESIDENT OR RESIDENT'S AUTHORIZED REPRESENTATIVE CHOOSES TO ENTER IN THE ARBITRATION AGREEMENT ATTACHED HERETO AS "EXHIBIT B," THEN ANY DISPUTES OR CLAIMS ARISING UNDER, OR IN CONNECTION WITH, OR RELATED TO THIS AGREEMENT OR RESIDENT'S STAY AT FACILITY SHALL BE SUBJECT TO THE TERMS AND CONDITIONS OF THE ARBITRATION AGREEMENT, AND THE ARBITRATION AGREEMENT IS FULLY INCORPORATED HEREIN BY REFERENCE.

(Doc. 34-2 at 20). Beneath Paragraph 24, the agreement reads:

> THE UNDERSIGNED AGREES THAT HE/SHE HAS READ THIS ADMISSION AGREEMENT, FULLY UNDERSTANDS ITS TERMS AND CONDITIONS, AND IN CONSIDERATION OF THE SERVICES TO BE RENDERED TO THE RESIDENT, AGREES, WHETHER AS THE RESIDENT OR RESIDENT'S AUTHORIZED REPRESENTATIVE, TO ALL OF THE TERMS AND CONDITIONS SET FORTH HEREIN.

(*Id.*). At the bottom of the page are lines for the signature of the Resident, Resident's Authorized Representative, Spouse, and Facility Representative.

Exhibit B to the Admission Agreement is a "Jury Trial Waiver and Arbitration Agreement." (Doc. 34-2 at 33). Exhibit B provides in relevant part: "The parties understand and

agree that all claims, disputes, and controversies of any kind between the parties arising out of or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration." (*Id.*). The last page of Exhibit B contains lines for the Resident, Resident's Authorized Representative, and Facility Representative to sign. (*Id.* at 37).

Birmingham East attached to its motion to compel arbitration a copy of the Admission Agreement with Patricia Connell's signature underneath the arbitration clause as the Resident's Authorized Representative, and Letoria Moore's signature as the Facility Representative. (Doc. 34-2 at 20). The Resident and Spouse lines are blank. Birmingham East's copy also contained signatures by Patricia Connell and Letoria Moore on the last page of Exhibit B, the Jury Trial Waiver and Arbitration Agreement. (*Id.* at 37).

Ms. Connell contends that she did *not* sign or agree to the arbitration agreement. (Doc. 36 at 4). She attached to her response a blank copy of the arbitration agreement with no signatures from any parties under the arbitration clause or on the last page of Exhibit B. (Doc. 36-2 at 20, 37). Ms. Connell maintains that neither Ms. Moore nor any facility representative discussed the arbitration agreement with her. (Doc. 36 at 4).

The parties submitted conflicting evidence regarding the validity of Ms. Connell's signature on Birmingham East's copy of the Admission Agreement. Ms. Connell testified in her deposition that she does not remember signing any documents during the admissions process, including an arbitration agreement. (Doc. 54-1 at 16). She testified that the signature "doesn't look like my handwriting." (*Id.* at 17). Birmingham East submitted affidavit testimony of a forensic handwriting expert, Steven G. Drexler, who conducted a forensic handwriting analysis using samples of Ms. Connell's handwriting and the Admissions and Arbitration Agreements.

(Doc. 53-3). Mr. Drexler concluded that he was certain Ms. Connell signed the Admissions and Arbitration Agreements. (*Id.* at 7).

Ms. Cox offers two arguments why the Arbitration Agreement is not enforceable: (1) Ms. Cox never signed the Arbitration Agreement and (2) the Arbitration Agreement was "elective" and Ms. Cox did not consent to its inclusion. The court will consider each argument in turn.

First, the court faces a purely factual question: whether Ms. Cox signed the Arbitration Agreement. Ms. Cox claims she did not sign the Arbitration Agreement and has a blank copy of the Agreement as evidence. Birmingham East claims Ms. Cox did sign the agreement and has a signed copy of the Agreement as evidence. If this were the end of the evidence, the court would find itself in a draw.

But Birmingham East submitted what Ms. Cox has not: the affidavit of a forensic handwriting expert. Mr. Drexler concluded with "the highest degree of confidence expressed by document examiners in handwriting comparisons" that Ms. Connell signed beneath the arbitration clause and on the last page of Exhibit B in the Admission Agreement. (Doc. 53-3 at 5–6). Ms. Cox offers no opposing expert. Her only rebuttal to Mr. Drexler's affidavit is that she "is as qualified, if not more so, to opine on whether the signature on the Arbitration Agreement is hers or not [sic]." (Doc. 54 at 8). So, the court finds that Ms. Cox did sign the Arbitration Agreement.

Second, the court considers whether the arbitration agreement was elective. Ms. Cox emphasizes that the arbitration clause says "IF THE RESIDENT OR RESIDENT'S AUTHORIZED REPRESENTATIVE *CHOOSES* TO ENTER IN THE ARBITRATION AGREEMENT" and refers to Exhibit B as the unsigned agreement. (Doc. 36 at 8). Ms. Cox is correct in her reading of the arbitration clause on page 16 of the Admission Agreement. But Ms.

Cox fails to look to Exhibit B, the Jury Trial Waiver and Arbitration Agreement. Exhibit B is not elective once selected, but requires that "*all* claims, disputes, and controversies of any kind between the parties . . . *shall* be resolved by binding arbitration." (Doc. 34-2 at 33 (emphasis added)). Ms. Cox signed this Arbitration Agreement, and the court will enforce it as written.

Therefore, the court will GRANT Defendant's motion to compel arbitration. The court will ORDER the parties to attend arbitration in accordance with the arbitration agreement signed on July 29, 2011. Because the required arbitration is binding, the court will DIRECT the Clerk of Court to close this case. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 12th day of February, 2019.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE